**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MALAK BAALIM, a.k.a. NORBERT K.O. CODY, II, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )     No. 4:21 CV 1341 MTS |
| | ) |
| JUDGE LYNNE PERKINS, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Malak Baalim, a.k.a. Norbert

K.O. Cody, II for leave to commence this civil action without prepayment of the required filing

fee.[1] Having reviewed the motion and the financial information submitted in support, the Court

has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an

initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons

discussed below, the Court will dismiss plaintiff's complaint without prejudice.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is

required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's

account, or (2) the average monthly balance in the prisoner's account for the prior six-month

---

[1] Plaintiff has not filed a separate motion for leave to proceed in forma pauperis, but has attached his request to the body of his complaint in a document titled: "Affidavit Please Accept [and] Waive Filing Fees." Doc. [1 at 8]. In the affidavit, plaintiff states that he is being held at the St. Louis Justice Center without the ability to print off the Court's forms, and that he has "no income." As such, he asks the Court to "please waive the court filing fees." The Court has construed this as a motion for leave to commence this civil action without prepayment of the required filing fee.

period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

Plaintiff has not submitted an inmate account statement as required by 28 U.S.C. § 1915(a)(2). Nevertheless, having reviewed the information contained in the motion – including plaintiff's assertion that he has "no income" – the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (explaining that when a prisoner is unable to provide the court with a certified copy of his inmate account statement, the court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his inmate account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the

2

elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the St. Louis City Justice Center in St. Louis, Missouri. He has filed a civil action that has been construed as arising under 42 U.S.C. § 1983. The complaint names Judge Lynne Perkins, Judge Katherine Fowler, Judge James E. Sullivan, Judge Michael Warren Noble, and Public Defender Brian Horneyer as defendants. Doc. [1 at 1, 6]. Plaintiff does not indicate the capacity in which defendants are sued. The allegations concern the handling of plaintiff's criminal cases in *State of Missouri v. Cody*,

3

2022-CR02131 (22nd Jud. Cir., City of St. Louis), and *State of Missouri v. Cody*, 2022-CR02131-01 (22nd Jud. Cir., City of St. Louis).[2] The defendants consist of four judges and plaintiff's public defender.

With regard to Judge Sullivan, plaintiff states that Sullivan held court on December 28, 2020, at which point plaintiff advised that he was there "in propria persona special guest appearance and that [he] didn't hire the attorney present who entered her limited appearance without [his] permission and signed off on his court order of detention with no bond." *Id.* at 1. During the hearing, plaintiff asserts that Judge Sullivan "kept muting the microphone" each time plaintiff tried to "object to the [defamation] of [character]" against him. *Id.* at 2. He alleges that Judge Sullivan should have released him, because he waived "no rights and signed no contract with the state court." Instead, Judge Sullivan entered a "not guilty" plea on plaintiff's behalf, even though plaintiff did not authorize it. Plaintiff further states that he challenged the court's jurisdiction, because jurisdiction was never proven. As plaintiff was making his objections, a sheriff's deputy "dragged [him] out [of] the court room." He alleges that this violated his right to due process. Due to plaintiff's emotional distress, he seeks $10,000 in damages from Judge Sullivan.

As to Judge Noble, plaintiff states that Noble held court on January 4, 2021. At the hearing, plaintiff advised the court as to his political status, that he was there "in propria persona special guest appearance," and that he "didn't hire the attorney who entered his/her limited appearance without [his] permission and signed off on the detention order with no bond." After hearing this,

---

[2] The Court has reviewed plaintiff's criminal cases on Case.net, Missouri's online case management system, and takes judicial notice of these public records. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"). Plaintiff's state court records show that he has been charged with second-degree burglary, attempted stealing of $750 or more, first-degree harassment, and second-degree harassment. As of January 19, 2022, the circuit court – on its own motion – ordered plaintiff to undergo a mental evaluation. The results of that evaluation are still pending.

Judge Noble "insulted" him by stating that he needed a "mental evaluation and drug screening." Plaintiff attempted to object to the purported defamation of his character, but Judge Noble "kept muting [his] microphone." As in his earlier hearing, a sheriff's deputy dragged him "out [of] the court room…during [his] objections." Due to this, plaintiff states that he suffered emotional distress, as well as problems with his family, personal, and business relationships. Doc. [1 at 3]. He is seeking $20,000 in damages from Judge Noble.

Concerning Judge Perkins, plaintiff states that Perkins held court dates on February 5, 2021, March 17, 2021, April 16, 2021, and May 5, 2021. As with the other judges, plaintiff asserts that Judge Perkins heard him say that he was there "in propria persona special guest appearance at each court date." Judge Perkins also heard plaintiff say that his "name was Malak Baalim and [his] person was Norbert K.O. Cody II and that the charges [were] a misnomer in [his] late grandfather['s] name." According to plaintiff, Judge Perkins ignored his motion to set aside the detention and also "refused to dismiss the case with prejudice for failure to state [a] cause of action." Judge Perkins also muted plaintiff's "microphone several times," and the sheriff's deputy dragged  him "out of court during [his] objections."

In addition, plaintiff asserts that Judge Perkins granted continuances over his objections, and ignored his right to a speedy trial. As a result, he states that his character was defamed, he "was disrespected with drug court screenings and mental [evaluation] attempts," that he "was held in custody in violation of the El Morocco Peace and Friendship Treaty [of] 1787," that he "lost personal, family and business relationships," that he was "sprayed in the eye with mace," and that he was denied dental care and a vegan diet. *Id.* at 3-4. Due to this, he seeks $100,000 in damages from Judge Perkins. *Id.* at 3.

With respect to Judge Fowler, plaintiff states that Fowler held court on June 2, 2021, August 5, 2021, August 25, 2021, and October 13, 2021. *Id.* at 4. He asserts that Judge Fowler "was made aware of [his] political status and that [he] was [there] in propria persona special guest appearance." According to plaintiff, Judge Fowler denied all of his motions, even though she was supposed to dismiss his case. He also accuses her of ignoring Judge Perkins's order stating that plaintiff was competent to represent himself.

Plaintiff states that Judge Fowler ordered him to be placed on GPS monitoring and house arrest, and directed him "to report to places for people and complete their programs and…to show up to court with an attorney." He asserts that he did not want to abide these conditions or "sign the bond." When he tried to refuse, Judge Fowler allegedly told him that she would "push the trial back up to 3 years and hold [him] in detention with no bond if [he] didn't sign." Plaintiff states that he signed in distress so that he could be "released from [his] kidnappers."

Eventually, it appears that plaintiff was released from custody with certain conditions attached. However, Judge Fowler issued a warrant and he was again detained without bond. Plaintiff states that Judge Fowler is "very unethical and has violated the right of due process," as well as the Fourth, Sixth, and Fourteenth Amendments. *Id.* at 5. As a result, he is seeking $200,000 in damages from Judge Fowler for emotional distress.

Finally, regarding Public Defender Horneyer, plaintiff states that Horneyer was appointed as defense counsel after Judge Fowler "refused to give [him a] trial or release [him] from custody until [he] hired an attorney." *Id.* at 6. He asserts that he filled out a public defender application form in distress, in the belief that Judge Fowler would release him "after [an] attorney filed for a bond reduction."

Public Defender Horneyer was assigned to plaintiff's case on October 19, 2021. *Id.* at 6-7. Instead of filing a motion for a bond reduction, plaintiff states that Horneyer filed a motion for discovery. *Id.* at 7. Plaintiff tried to call Horneyer, and left him voicemails, but Horneyer did not contact him. When Horneyer sent plaintiff legal mail, it did not "include the bond reduction sheet he stated he needed [plaintiff] to fill out." Plaintiff wrote several letters, left messages with the operator at the Public Defender's Office, and left messages with the caseworker at the St. Louis City Justice Center, but received no responses. He also asked Horneyer to file certain motions, again without receiving a response. Plaintiff contends that Horneyer has "neglected [him] as a client" and left him "stuck in custody suffering emotional [distress] and irreparable damages." As a result, he is seeking $20,000 in damages from Horneyer.

Plaintiff notes that all the exhibits are available on Case.net, and that damages can be paid to him via a check made out to "The Good Fighters LLC," which is a non-profit organization. *Id.* at 5.

Subsequent to the filing of his complaint, plaintiff submitted a supplement in which he asks the Court to enjoin, dismiss, and stop his "ongoing criminal prosecution." Doc. [2]. In support, he states that he is being held in custody "in violation of the El Morocco Peace and Friendship Treaty [of] 1787," and that the prosecutor has not presented any evidence supported by witnesses. Plaintiff complains that he has made several motions to dismiss, which have not been granted, that he has received no discovery, and that his right to a speedy trial has been violated. He also asserts that due to his detention, he has been subjected to poor conditions of confinement.

### Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging constitutional violations by four judges and his public defender. Because plaintiff

is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

**A. Construction of Case as Arising Under 42 U.S.C. § 1983**

Plaintiff asserts that the Court has jurisdiction based on the Uniform Commercial Code; 28 U.S.C. § 1346; 28 U.S.C. § 2241; and 42 U.S.C. § 1983. Since plaintiff is seeking money damages for the alleged violation of his constitutional rights, the Court has construed this action as arising under § 1983. *See Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails"); and *Beeks v. Hundley*, 34 F.3d 658, 661 (8th Cir. 1994) (stating that "the central purpose of § 1983 is to provide compensatory relief to those deprived of their federal rights by state actors").

The Court notes that plaintiff's other proposed sources for jurisdiction are not appropriate based on the allegations in his complaint. The Uniform Commercial Code, for instance, is not a federal law, but a uniformly adopted state law governing commercial transactions. *See Cassello v. Allegiant Bank*, 288 F.3d 339, 340 (8th Cir. 2002) (noting that "UCC" is a state law). Meanwhile, 28 U.S.C. § 1346 relates to the filing of tort claims against the United States, which is not at issue here.

As to 28 U.S.C. § 2241, the Court notes that this section provides for the granting of a writ of habeas corpus. A state court defendant attempting to litigate the authority of his or her pretrial detention may bring a habeas petition pursuant to § 2241. *See Palmer v. Clarke*, 961 F.2d 771, 774 (8th Cir. 1992) (noting that it was well-established that federal district courts could entertain a § 2241 petition in which petitioner asserted an impending Double Jeopardy Clause violation).

The Court observes that in his supplement, plaintiff seeks the dismissal or enjoinment of his criminal case for a variety of reasons, including on speedy trial grounds. Plaintiff does not, however, refer to a writ of habeas corpus. Moreover, instead of naming as respondent the person having custody of him, he has identified four judges and his public defender as the defendants in this action. Finally, in his complaint, he is expressly seeking damages for the alleged violations of his constitutional rights, an action appropriately brought under 42 U.S.C. § 1983. Therefore, it is under § 1983 that plaintiff's claims will be analyzed.

**B. Official Capacity Claims Against Judge Perkins, Judge Fowler, Judge Sullivan, Judge Noble, and Public Defender Horneyer**

Plaintiff has named Judge Perkins, Judge Fowler, Judge Sullivan, Judge Noble, and Public Defender Horneyer as defendants in this action. He has not, however, indicated the capacity in which they are sued. A plaintiff can bring a § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). However, if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims. *Id*. *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims").

9

As noted above, plaintiff has not indicated the capacity in which he has sued Judge Perkins, Judge Fowler, Judge Sullivan, Judge Noble, and Public Defender Horneyer. Thus, the claims against them are treated as being made in their official capacities.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, defendants Perkins, Fowler, Sullivan, and Noble are all alleged to be state court judges, while Horneyer is alleged to be a state public defender. As such, the official capacity claims against them are treated as claims against the State of Missouri itself. The claims fail for two reasons.

First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining

that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983").

In this case, plaintiff is expressly seeking money damages against Judge Perkins, Judge Fowler, Judge Sullivan, Judge Noble, and Public Defender Horneyer. As they are state employees, the official capacity claims against them are actually against the state itself. However, in a claim for money damages, the state does not constitute a "person" for purposes of 42 U.S.C. § 1983. Because he is missing an essential element of a § 1983 cause of action, the official capacity claims must be dismissed.

Second, plaintiff's official capacity claims are barred by sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl*, 72 F.3d at 618-19 ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Additionally, "[a] claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment." *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception does not apply because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception also does not apply because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is in effect, and providing exceptions).

As previously noted, plaintiff is expressly seeking money damages in this case. Therefore, the official capacity claims against defendants Perkins, Fowler, Sullivan, Noble, and Horneyer – who are all employed by the state – are barred by sovereign immunity. Furthermore, there is no indication that any exception to sovereign immunity exists in this case.  As such, plaintiff's official capacity claims against Judge Perkins, Judge Fowler, Judge Sullivan, Judge Noble, and Public Defender Horneyer must be dismissed.

To the extent that plaintiff's complaint can somehow be construed as containing a request for prospective injunctive relief against the State of Missouri, the Court notes that plaintiff has not established the State of Missouri's liability for violating his constitutional rights. Such liability may be established by showing that a governmental entity has an unconstitutional policy, custom, or failure to train. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Plaintiff's facts, such as they are, do not support – or even suggest – the proposition that he was harmed by a policy, custom, or failure to train on the part of the State of Missouri. For this reason as well, the official capacity claims against Judge Perkins, Judge Fowler, Judge Sullivan, Judge Noble, and Public Defender Horneyer must be dismissed.

### C. Individual Capacity Claims Against Judge Perkins, Judge Fowler, Judge Sullivan, and Judge Noble

Even if the Court were to treat Judge Perkins, Judge Fowler, Judge Sullivan, and Judge Noble as being sued in their individual capacities, the claims would still be subject to dismissal because of judicial immunity.

Based on the premise that a judicial officer should be free to act upon his or her own convictions, judicial immunity provides a judge with immunity from suit. *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity

13

because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from 42 U.S.C. § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). *See also Justice Network, Inc.*, 931 F.3d at 760 (stating "that to determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge").

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of the judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762. "[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

In this case, based on the allegations presented by plaintiff, Judge Perkins, Judge Fowler, Judge Sullivan, and Judge Noble are all entitled to judicial immunity. Though plaintiff's facts consist mainly of conclusory assertions, it is clear that he is complaining about the decisions these judges have made in the course of his criminal case. For instance, he accuses them of not reducing his bond, refusing to dismiss his case, and of ordering him to undergo a mental health evaluation. There is nothing to suggest that Judge Perkins, Judge Fowler, Judge Sullivan, and Judge Noble took any non-judicial action. Likewise, there are no facts to support the proposition that any of

these judges acted in the complete absence of jurisdiction. Rather, plaintiff simply appears upset that certain rulings were not made in his favor, and contends that because of these rulings, his constitutional rights were violated. As noted above, however, judicial immunity protects a judge from suit when taking judicial action, even if the action was in error. Therefore, even if plaintiff had sued Judge Perkins, Judge Fowler, Judge Sullivan, and Judge Noble in their individual capacities, the claims must be dismissed.

Immunity aside, plaintiff has still failed to assert individual capacity claims against Judge Perkins, Judge Fowler, Judge Sullivan, and Judge Noble. Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has not connected any act or omission on the part of any of the judges with the violation of one of his constitutional rights. That is, plaintiff does not provide factual support for his argument that the rulings of these judges were unconstitutional. Plaintiff's statements to the contrary amount to legal conclusions, which are not entitled to the presumption of truth. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as

15

true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). For this reason as well, even if plaintiff had sued Judge Perkins, Judge Fowler, Judge Sullivan, and Judge Noble in their individual capacities, the claims against them must be dismissed.

### D. Individual Capacity Claim Against Public Defender Horneyer

As with Judges Perkins, Fowler, Sullivan, and Noble, even if Public Defender Horneyer was sued in his individual capacity, the claim against him must be dismissed, as Horneyer was not acting under color of law.

"The essential elements of a [42 U.S.C.] § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020). A defense attorney, however, whether appointed or retained, does not act under color of state law, and thus cannot be liable for the alleged deprivation of constitutional rights under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990) (stating that the Eighth Circuit "has repeatedly held that both retained and appointed attorneys are not liable for deprivations of constitutional rights under 42 U.S.C. § 1983 for the reason that they do not act under color of state law"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel").

16

In this case, plaintiff alleges that Public Defender Horneyer failed to file certain motions, failed to respond to his phone calls, failed to respond to his letters, and otherwise neglected him as a client. These accusations all pertain to Horneyer's performance of the traditional functions of a defense attorney. As noted above, however, a public defender does not act under color of state law when fulfilling a defense attorney's traditional role. Because plaintiff has failed to allege that Horneyer was acting under color of state law, he has failed to state a claim under 42 U.S.C. § 1983. Therefore, the claim against Horneyer must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 1st day of February, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE